UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TONY D. PARKS**,  Plaintiff,  v.  **GIANT FOOD STORE,** *et al.*,  Defendants. | Case No. 1:21-cv-02765 (TNM) |

**MEMORANDUM OPINION**

Plaintiff Tony Parks has worked for over a decade at multiple Giant grocery stores and has made multiple complaints to outside authorities about his employer. Proceeding pro se, he sues Giant, asserting claims of retaliation and breach of contract. Giant moves for summary judgment. The Court will grant that motion because Parks did not face severe or pervasive mistreatment, and there are no facts connecting the conduct he complains about to protected activity. And because Parks has shown no damages resulting from the alleged breach of contract, that claim fails too.

I.

The Court recounts the facts in the light most favorable to Parks.[1] Giant has employed Parks since early 2013. Def. Statement of Mat. Facts (SMF) ¶ 1, ECF No. 42-2. During that time, he has worked "in at least five different Giant stores." EEOC Compl. at 11, ECF No. 4-1.

A dispute with Giant previously led to litigation before this Court. *See Parks v. Giant of Md., LLC*, 295 F. Supp. 3d 5 (D.D.C. 2018). That lawsuit settled. *See* Settlement Agreement,

---

[1] A party opposing summary judgment must file "a separate concise statement of genuine issues setting forth all material facts" that he disputes. *See* LCvR 7.1(h). Parks filed no such

ECF No. 7. Among other things, Giant agreed to provide Parks with two in-person meetings with the HR Director, Maribel Dichard, within six months of the execution of the agreement. *See id.* at 11; SMF ¶¶ 90–91. Dichard met with Parks in-person in September 2018, and she remained in contact with Parks by phone and email after that. *See id.* ¶ 92; Dep. of Tony Parks (Parks Dep.) at 68–69, ECF No. 42-3.

Parks in 2019 filed a Charge of Discrimination with the EEOC, alleging religious discrimination. *See* SMF ¶ 12–13. The mistreatment he complains of here stems from his time at the Alabama Avenue Giant, where he has worked since mid-2020. *See id.* ¶ 1.

Parks was unhappy at that store from the start. On his first day, his manager, Dionne Martin, called him into her office and "started in on him." *Id.* ¶ 30. She gave him a list of things not to do, including not to talk back to managers or treat anyone disrespectfully. *Id.* And the next day Martin yelled and pointed her finger at him because he had called HR when he could not clock in at work. *Id.* ¶ 32. After this, things were "good" between Martin and Parks for a "while." *Id.* ¶ 35.

In January 2021, Parks reported to a manager that the front doors to the store were unlocked, even though the store was closed. *See id.* ¶ 48–49. Parks heard that Martin later chastised some of his coworkers about leaving the door unlocked. *See id.* ¶ 50. The next day, Martin approached him in front of his coworkers and said, "I handled your situation." *See id.* ¶ 52. Apparently because of this, one of Parks' coworkers, a clerk, confronted him in the breakroom. *See id.* ¶¶ 53–54. The clerk stole something out of Parks' locker, told him to stop

---

document, so the Court considers Giant's statement of material facts undisputed. *See Jackson v. Finnegan, Henderson, Garabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) ("strict compliance" with this rule is justified).

snitching, and threatened to kill him.[2]  *See id.* ¶ 54; Incident Report at 1, ECF No. 44-1; Opp'n at 3, ECF No. 44.

About ten minutes later, the clerk approached him again in the loading dock area, called him a "bitch" and "snitch," and balled his fists.  *See* SMF ¶ 57.  Parks then started to leave the store.  *See id.* ¶ 61.  At that point, several other coworkers started following him, saying "snitches get stiches," and Parks thought the group was going to "jump him."  *Id.* ¶¶ 62–63.  The group did not follow Parks outside, where his ride was waiting.  *See id.* ¶ 65.

After Parks reported the incident to HR, Giant investigated and fired the clerk.  *See id.* ¶¶ 79–80.  A few months after that, the manager position in Parks' department became vacant.  *See id.* ¶¶ 14–16.  Parks was passed over for the promotion, and he was frustrated because management selected an employee with less experience and seniority.  *See id.* ¶¶ 17–18.  So he complained to HR and filed a Charge of Discrimination with the EEOC.  *See id.* ¶¶ 17, 22.

After these complaints, Parks felt that Martin started giving him a hard time.  She began chastising him for the order in which he performed his duties and for certain tasks not being completed.  *See id.* ¶ 36.  Martin also started having Parks' manager leave him "to do" lists every night.  *See id.* ¶¶ 37–38.  And Martin screamed and pointed a finger at him after he reported to someone outside of store management that a manager had incorrectly labeled expiration dates.  *See id.* ¶ 39.  After Parks again reported the mislabeling to someone outside of management, Martin yelled at Parks for not coming to her first.  *See id.* ¶ 42.

Around a year later, in May 2022, Parks had another confrontation with a coworker, a new hire named Lamont Gray.  *See id.* ¶¶ 71–72.  Gray arrived at the store's locked door, but

---

[2]  In his deposition, Parks said that the employee threatened to punch him in his face.  *See* Parks Dep. at 46.

Gray was not in uniform. *See id.* ¶ 73. Parks did not recognize him, so he did not let Gray inside and instead called for assistance. *See id.* After another employee let Gray in, he confronted Parks and there was a verbal altercation. *See id.* ¶ 74. Gray continued to be "verbally abusive" after this incident. Opp'n at 3. Parks learned that a manager had told Gray that Parks was a snitch. *See* SMF ¶ 75. Parks spoke with HR about Gray, and HR then coached Gray about following protocol and offered Parks the chance to switch locations, which he declined. *See id.* ¶ 83–85.

In November, Parks had a verbal altercation with another employee. *See* Opp'n at 3–4 (employee "[d]idn't agree with a conversation that I was having an ask [sic] me to go outside and yeah"). Parks called the police and filed a report, but the police found no probable cause that a crime was committed. *See* 2d Incident Rep. at 12, ECF No. 44-1.

Parks sued Giant for age discrimination, retaliation, and breach of contract. *See* Am. Compl. (Compl.) at 3, ECF No. 4. Giant moved to dismiss, and this Court granted that motion in part, leaving Parks' retaliatory hostile work environment and breach of contract claims for discovery. *See* Order at 6, ECF No. 22. Giant now moves for summary judgment. The Court will grant that motion because no reasonable juror could find for Parks.

II.

Summary judgment is proper when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (cleaned up). And "if the evidence is merely colorable, or is not significantly probative,

4

summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

In this posture, the Court views the facts in the light most favorable to the party opposing summary judgment. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). And because Parks is pro se, the Court holds his pleadings to a "less stringent" standard than "formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). But he must still comply with the Federal and Local Rules. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016).

### III.

Consider first Parks' claim that Giant retaliated against him by creating a hostile work environment. To prevail, Parks must show that Giant subjected him to "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (cleaned up).

In conducting this inquiry, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The collective mistreatment "must be extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). These "demanding" standards exist because Title VII is not "a general civility code." *Id.* So "this is a difficult claim to successfully advance." *Arnoldi v. Bd. of Trs., Nat'l Gallery of Art*, 557 F. Supp. 3d 105, 120 (D.D.C. 2021), *aff'd*, 2022 WL 625721 (D.C. Cir. Mar. 1, 2022).

Parks has not shown that he faced severe or pervasive harassment. Start with his complaints about his manager, Dionne Martin. He complains that Martin, over the course of a

5

year, repeatedly yelled at him for his performance, which he protests was unwarranted. *See* SMF ¶¶ 32, 39, 42. Parks adds that Martin also directed his supervisor to leave him "to do" lists every night. *See id.* ¶¶ 37–38. These gripes boil down to a claim that Martin was a tough supervisor who unfairly criticized him for his performance.

These submissions show no violation of federal law. To begin, courts have generally rejected claims that are "based on work-related actions by supervisors." *Wade v. District of Columbia*, 780 F.3d 2d 1, 19 (D.D.C. 2011). And even if unwarranted, a supervisor's "demeaning manner and loud, aggressive words are neither severe nor pervasive enough to create a hostile work environment." *Casey v. Mabus*, 878 F. Supp. 2d 175, 189 (D.D.C. 2012). Parks never felt physically intimidated or humiliated by Martin. *See* SMF ¶ 44; *Faragher*, 524 U.S. at 787 (considering whether mistreatment "is physically threatening or humiliating"). More, these sporadic incidents occurred over the course of a year.

"Bosses may be harsh, unfair and rude, but conduct so characterized does not necessarily rise to the level of a Title VII violation." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188 (D.D.C. 2012). Parks' encounters with Martin are run-of-the-mill conflicts between an employee and supervisor that are not policed by federal law.

Nor do the isolated incidents of alleged harassment by Parks' coworkers show a hostile work environment. Parks describes an incident in January 2021 when his coworkers started following him as he left the store, saying "snitches get stiches." SMF ¶¶ 62–63. Parks also complains of verbal altercations with two other coworkers that occurred in May and November 2022. *See id.* ¶¶ 70–74; Opp'n at 3–4. These "isolated incidents"—spanning over a year and a half and involving different coworkers—were not "extremely serious" and do not meet the demanding standard required to show a hostile work environment. *Faragher*, 524 U.S. at 788.

More, if a coworker "is unaware . . . that a plaintiff engaged in protected conduct, any actions attributable to him could not plausibly have been induced by retaliatory motives." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 72 (D.D.C. 2013).  And Parks testified that he has no reason to believe that anyone involved in the January 2021 incident knew of his protected activity.  *See* SMF ¶ 69.  Similarly, Parks stated that Gray, who confronted him in May 2022, thought he was a "snitch" for reporting Gray's misconduct to management.  *See* SMF ¶¶ 73–77.  This has nothing to do with Parks' protected activity.

Parks does describe a more serious confrontation with a clerk that occurred in the locker room.  Apparently in retaliation for Parks reporting the clerk to his supervisor, the clerk stole something out of Parks' locker, told him to stop snitching, and threatened to kill him.  *See* SMF ¶ 54; Incident Report at 1; Opp'n at 3.  Though this incident may be serious, it cannot sustain Parks' hostile environment claim.  The threatening behavior cannot be attributed to Giant.

"When harassment is inflicted by non-supervisory co-workers, vicarious liability depends on the plaintiff showing that the employer knew . . . about the harassment but failed to take appropriate remedial action."  *Bergbauer*, 934 F. Supp. 2d at 72.  The problem for Parks is that Giant promptly took remedial steps after learning of the incident.  After Parks reported the altercation contemporaneously to his district manager, the manager told him to stay put and sent security.  *See* SMF ¶ 60.  Giant then investigated and fired the abusive clerk within a few weeks.  *See id.* ¶ 80.  More, HR offered to transfer Parks to another location, but he declined.  *See id.* ¶ 81.  So Giant is not responsible for the clerk's threatening behavior.

Parks has not shown that he experienced severe or pervasive mistreatment attributable to Giant and thus his hostile environment claim fails.

**IV.**

Now for Parks' breach of contract claim. Recall that Giant and Parks signed an agreement that entitled Parks to two in-person meetings with the human resources director, Maribel Dichard, within six months of the execution of the agreement. *See* Settlement Agreement at 11. Parks contends that Giant breached this provision because he had only one in-person meeting in that time.

To win, Parks must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Giant argues that Parks has shown no material breach of the settlement agreement or that he suffered damages from any alleged breach.

Even if Giant materially breached the agreement, Parks' claim still fails. It is well-settled that "there can be no monetary recovery unless the plaintiff has suffered harm." *Id.* And Parks has shown no harm resulting from Giant's failure to arrange a second in-person meeting.

Parks complains that Giant's failure to arrange a second meeting caused him to miss out on a promotion. *See* Opp'n at 5. But Parks' conjecture is not enough. To survive summary judgment, his claimed damages cannot be speculative. *See Chambers v. Cobb*, 193 A.3d 123, 128 (D.C. 2018). He must produce evidence of "discernable consequences" flowing from the breach. *Id.* He has not done so.

*First*, there is no evidence that the lack of a second meeting altered Parks' opportunities for advancement. Within the six-month period, Dichard spoke with Parks either in-person or over the phone at least four times. *See* SMF ¶¶ 92–106. Indeed, Parks testified that he was in regular contact with Dichard and another HR officer throughout that time, and that someone

from HR has always responded to his concerns. *See id.* ¶ 108–09. There is no reason to believe that an additional in-person meeting would have advantaged Parks given the other HR support Giant provided.

*Second*, there is no evidence of any promotion for which Parks did not apply because of the lack of an additional in-person meeting in 2018. Instead, Parks points to being passed over for a promotion three years later. *See* EEOC Compl. at 6–8. But he has not shown how Giant's failure to hold a particular meeting years earlier influenced his nonselection. Parks does not assert—even in a conclusory manner—that this nonselection resulted from Giant's failure to hold a second in-person meeting. *See* Opp'n at 5; Pl.'s Reply at 2.

Parks has not raised a triable issue of fact as to damages. So his contract claim fails.

## V.

The record depicts a longtime employee who has had intermittent spats with coworkers and management. But he has shown no violation of the law. The Court will thus grant Giant's motion for summary judgment.

A separate Order will issue today.

Dated: July 17, 2023                                                TREVOR N. McFADDEN, U.S.D.J.